**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

PARKERVISION, INC.,

              Plaintiff,

v.

MEDIATEK INC. and
MEDIATEK USA INC.,

              Defendants.

Case No. 6:22-cv-01163-ADA

**JURY TRIAL DEMANDED**

**DEFENDANTS MEDIATEK INC. AND MEDIATEK USA INC.'S
*DAUBERT* MOTIONS**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD ....................................................................................................2

III. ARGUMENT ................................................................................................................2

    A.  Mr. Benoit's Damages Base Exceeds The Bounds Of § 271(a) ............................2

        i.  Mr. Benoit's Category 2 And 3 Damages Contravene The Domestic Infringement Requirement ...........................................4

        ii.  Mr. Benoit's Damages Are Not Tied To A Valid Infringement Theory ...........................................................................5

        iii.  Mr. Benoit Fails To Show Any Causation To Warrant Foreign Damages ....................................................................7

    B.  Mr. Benoit's Category 3 Importation Calculation Also Fails Under *Cyntec*...........9

    C.  Mr. Benoit Fails To Apportion ............................................................................13

        i.  Mr. Benoit Violates Black Letter Law By Relying On A Non-Comparable Agreement To Attribute ▮▮▮▮▮ To The Receiver Functionality ...............................................................13

        ii.  Mr. Benoit's Allocation Of 100% Of The SSPPU Receiver Technology To The Asserted Patents Is Unreliable And Violates Controlling Law ...............................................................................14

    D.  Mr. Benoit Lacks The Requisite Expertise For His Cost-Savings Opinions .........17

    E.  Mr. Benoit's 50/50 Profit Allocation Contravenes Federal Circuit Law ...............19

IV. CONCLUSION ...........................................................................................................21

i

## **TABLE OF AUTHORITIES**

Page(s)

### **Cases**

*AOS Holding Co. v. Bradford White Corp.*,
No. CV 18-412-LPS, 2021 WL 5411103 (D. Del. Mar. 31, 2021),
*aff'd sub nom. A. O. Smith Corp. v. Bradford White Corp.*,
No. 2021-2222, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022) ...................................................6

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*,
970 F. Supp. 2d 278 (S.D.N.Y. 2013)....................................................................................18

*Baxalta Inc. v. Bayer Healthcare LLC*,
513 F. Supp. 3d 426 (D. Del. 2021).........................................................................................5

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
No. 3:14-cv-00751, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019)........................................21

*Bourjaily v. U.S.*,
483 U.S. 171 (1987)..................................................................................................................2

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024),
*cert. denied sub nom. Brumfield Tr. for Ascent Tr. v. IBG LLC*,
145 S. Ct. 1922 (2025), *reh'g denied*, 145 S. Ct. 2807 (2025)................................4, 7, 8, 9, 16

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)...............................................................................................16

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-CV-04738-WHO, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ...........................19

*Cyntec Co., Ltd. v. Chilison Elec. Corp.*,
84 F.4th 979 (Fed. Cir. 2023) ........................................................................................9, 10, 11

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579 (1993)...........................................................................................................2, 19

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
No. C 11-05973 PSG, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) ...................................21

*Exafer Ltd v. Microsoft Corp.*,
No. 1:20-CV-131-RP, 2024 WL 4212347 (W.D. Tex. Aug. 15, 2024)
*appeal pending*, No. 24-2296 (Fed. Cir. Filed Sept. 10, 2024) ...............................................7

*Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*,
879 F.3d 1332 (Fed. Cir. 2018)...............................................................................................16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).................................................................16

*Good Tech. Corp. v. Mobileiron, Inc.*,
No. 5:12-CV-05826-PSG, 2015 WL 4090431 (N.D. Cal. July 5, 2015)................................20

*GPNE Corp. v. Apple, Inc.*,
No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .........................17, 21

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
769 F.3d 1371 (Fed. Cir. 2014).................................................................3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...................................................................14

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).................................................................14

*M2M Solutions LLC v. Motorola Solutions, Inc.*,
C.A. No. 12-33-RGA, 2016 WL 767900 (D. Del. 2016) .........................................17

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) .............................................................13, 14

*Neely v. PSEG Tex., LP*,
No. M-10-cv-030, 2012 WL 12877923 (W.D. Tex. May 29, 2012) ..............................2

*NetFuel, Inc. v. Cisco Sys. Inc.*,
No. 5:18-CV-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ......................15

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ...........................................................6, 10, 12

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005),
*abrogated on other grounds by, Zoltek Corp. v. United States*,
672 F.3d 1309 (Fed. Cir. 2012)..................................................................7

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ...............................................................13

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-cv-03597-WHO, 2018 WL 6727826, at *12 (N.D. Cal. Dec. 21, 2018) ...............15

*Paltalk Holdings, Inc. v. Cisco Sys., Inc.*,
No. W-21-CV-00757-ADA, 2025 WL 2581690 (W.D. Tex. Aug. 27, 2025).....................12

*Power Integrations v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..................................................................................10

*Sonos, Inc. v. Google LLC*,
   No. 20-06754, 2023 WL 3933071 (N.D. Cal June 9, 2023)....................................................21

*Sound View Innovations, LLC v. Hulu, LLC*,
   33 F.4th 1326 (Fed. Cir. 2022) .................................................................................11

*Southard v. United Reg'l Health Care Sys., Inc.*,
   No. 7:06-cv-11-L, 2008 WL 4489692 (N.D. Tex. Aug. 5, 2008)...........................................5

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)...........................................................................5, 6, 7

*TK-7 Corp. v. Est. of Barbouti*,
   993 F.2d 722 (10th Cir. 1993) .................................................................................11

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).........................................................................15, 20

*WesternGeco LLC v. ION Geophysical Corp.*,
   585 U.S. 407 (2018).............................................................................................7

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012)....................................................................................11

## Statutes

35 U.S.C. § 271(a) ..............................................................................2, 3, 4, 5, 7

## Other Authorities

FED. R. EVID. 702............................................................................................2

██████████████████████████████████

## I.    INTRODUCTION

The reasonable royalty opinions proffered by ParkerVision's damages expert, Paul Benoit, are fundamentally misaligned with the evidence and theories of infringement in this case, replicate flaws that the Federal Circuit has repeatedly held require exclusion, and contradict black letter law. For each and every one of the reasons below, they should not be presented to the jury.

***First***, Mr. Benoit purports only to assess the damages caused by MediaTek's and its affiliates ***direct*** infringement of the asserted patents, but ████████████████ of his proffered damages base is, at most, the result of ***indirect*** infringement. MediaTek is a foreign company that sells and ships all but a *de minimis* amount of chips to customers outside of the United States. Mr. Benoit attempts to bring ██████████████████ into this case on the theory that MediaTek's ***customers*** might import them, but never comes close to the demanding *Brumfield* standard for attributing such acts to MediaTek itself.

***Second***, even if the accused products that MediaTek sells abroad to customers that purportedly import them were not irrelevant as a matter of law and logic, his opinion regarding them would nonetheless fail on this record. Mr. Benoit estimates the amount of foreign sales that may be ultimately imported into the United States using broad industry data untethered to the specific facts of this case, an approach the Federal Circuit held invalid and excluded in *Cyntec*.

***Third***, Mr. Benoit ████████████ the revenues of the purported SSPPUs between transmitter and receiver technologies. But his proffered support for that ████████████████████ from an agreement that he himself opines is not comparable. Mr. Benoit then provides conclusory 100% apportionment opinions that do not comply with long-established, controlling law and fail to capture the actual footprint of the asserted claims.

███████████████████████████████████

**Fourth**, Mr. Benoit offers technical "cost-savings" opinions despite lacking the requisite expertise.  Mr. Benoit's vague "eye" test and errant interpretation of technical documents, without any input from ParkerVision's technical expert, renders his opinions speculative, unsupported, and not fit for the jury.

**Finally**, Mr. Benoit completes his calculation with a rule-of-thumb 50/50 profit split that is not supported by the record or any reliable analysis, and it is untethered to the facts of this case.  The Federal Circuit has repeatedly rejected such conclusory, boilerplate assumptions, and this Court should as well.

## II.    LEGAL STANDARD

Expert testimony must be based on: (1) scientific, technical, or other specialized knowledge that will help the trier of fact understand the evidence or determine a fact in issue; (2) sufficient facts or data; and (3) reliable principles and methods to the facts of the case.  FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591-94 (1993).  ParkerVision bears the burden to demonstrate that its expert meets these requirements.  *See Neely v. PSEG Tex., LP*, No. M-10-cv-030, 2012 WL 12877923, at *2 (W.D. Tex. May 29, 2012) (citing *Bourjaily v. U.S.*, 483 U.S. 171 (1987)).

## III.    ARGUMENT

### A.    Mr. Benoit's Damages Base Exceeds The Bounds Of § 271(a)

MediaTek is a foreign company that primarily sells its chips to foreign customers.  These customers then incorporate them into products, some of which are ultimately imported or sold in the United States.  Ex. 1 (Benoit Rpt.), ███████████████████████████.  MediaTek ███████████████ directly into the United States.  *See* █████████████████████████████

████████



Mr. Benoit purports to assess damages from **direct** infringement only.  But almost all of his damages base is, at best, the result of alleged **indirect** infringement.  Specifically, Mr. Benoit derives his reasonable royalty base from three different categories of sales—two of which have nothing to do with any potential act of direct infringement, which requires an act "within the United States" under § 271.

**Category 1.**  First, there is a ▬▬▬▬ quantity of chips that MediaTek sells and/or ships directly to customers in the United States.  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  The purported damages from these ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬ are **not** at issue in this motion.

**Category 2.**  Second, there are chips that MediaTek sells or ships outside the United States.  Mr. Benoit nonetheless includes 100% of these sales—▬▬▬▬▬▬▬▬▬▬—merely because a downstream customer of MediaTek ▬▬▬▬▬▬▬▬▬▬▬▬. ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬  Under binding Federal Circuit law, it is not an act of direct infringement to make, sell, ship, and deliver product outside the United States, merely because an ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ or because the product may eventually go to the U.S. *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371 (Fed. Cir. 2014); *see* MediaTek MSJ #1.

**Category 3.**  Third, MediaTek sells chips to foreign customers who then may incorporate those chips into products, some percentage of which may then be imported or sold into the United States.  To the extent ParkerVision wishes to accuse these sales of infringement, however, they are necessarily acts of alleged indirect infringement, as there is no allegation MediaTek itself imports

██████████████████████████████

or sells these chips into the United States.  *See* MediaTek MSJ #2.  Despite this, using unreliable methodology, Mr. Benoit conjures up an estimate of the number of MediaTek foreign sold chips that these third parties (or further downstream customers) might ultimately import as part of a finished product.  ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

### i.    Mr. Benoit's Category 2 And 3 Damages Contravene The Domestic Infringement Requirement

At the outset, the entirety of Mr. Benoit's damages opinions is expressly premised solely on a theory of direct infringement, even though ████████████ of his royalty base is derived from foreign sales/shipments and third-party importation/sale. Ex. 1 ¶¶ 105, 107, 113.  The phrase "indirect infringement" does not appear anywhere in Mr. Benoit's report.  *See generally* Ex. 1. Mr. Benoit's damages opinions related to the royalty base violate controlling law and should be excluded.

It is black letter law that only domestic conduct can constitute infringement.  *See* 35 U.S.C. § 271(a); *Brumfield , Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 875 (Fed. Cir. 2024), *cert. denied sub nom. Brumfield Tr. for Ascent Tr. v. IBG LLC*, 145 S. Ct. 1922 (2025), *reh'g denied*, 145 S. Ct. 2807 (2025) ("At least the making, using, offering to sell, and selling provisions are expressly limited to domestic acts.").  But there is no underlying or supportable claim of direct infringement by MediaTek *in the United States* for the foreign sales he includes in his base.  *See* MediaTek MSJ #1.  Nor could there be.  MediaTek is a Taiwanese company that designs, tests, and sells its

chips (█████████████████████████████) outside the United

States.

Nonetheless, Mr. Benoit categorizes MediaTek sales to foreign third parties as direct infringement.  Specifically, he treats the acts of those foreign third parties in importing products including MediaTek's chips, or in selling to downstream US customers, as if they are acts of direct infringement by MediaTek.  *See* Ex. 1, Exs. K.1 and K.3.  Under Mr. Benoit's contorted framework, direct infringement includes an unrelated, foreign party incorporating MediaTek's chip into a finished product, then importing or selling that product into the U.S.—despite the fact the sale by MediaTek occurred overseas and the importation was not done by MediaTek.  *See id.* This flies in the face of 35 U.S.C. § 271(a) and the caselaw.  Thus, "where as here, the expert's opinion is based on an erroneous legal premise, it is appropriate to exclude such testimony." *Southard v. United Reg'l Health Care Sys., Inc.*, No. 7:06-cv-11-L, 2008 WL 4489692, at *2 (N.D. Tex. Aug. 5, 2008); *see also Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 448 (D. Del. 2021) ("The plain text of Paragraph 10 recites an erroneous legal standard and I must exclude any testimony based on it.").

ii.    <u>Mr. Benoit's Damages Are Not Tied To A Valid Infringement Theory</u>

Mr. Benoit's damages opinions related to Category 2 and 3 sales also fail because no evidentiary support connects the damages to an act of infringement.  The Federal Circuit has made clear that for an award of damages, the patentee must "adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

Accordingly, an expert's damages opinions must flow from a corresponding infringement theory.  For example, in *TecSec v. Adobe*, the Federal Circuit affirmed the district court's reduction of a jury's damages award to zero because the damages evidence did not match the infringement theory.  *Id.* at 1291-92.  Specifically, TecSec relied on evidence of Adobe's "sales of accused

products." *Id.* Direct infringement could only occur, however, after the accused product was **installed**—i.e., the sale could not be infringing. *Id.* Therefore, Adobe's sales "cannot be a measure of damages for direct infringement by Adobe." *Id.* at 1292. Instead, the "sales could serve here as a measure of damages only for TecSec's indirect infringement theory, which relie[d] on infringement by Adobe customers." *Id.*

Mr. Benoit makes the same fatal error. Category 2 sales—sales to foreign customers who may eventually import into the US or sell to downstream US customers—indisputably require action by MediaTek's customers to allegedly meet the elements of the asserted claims and infringe (*e.g.*, importation or sales into the United States by MediaTek's customers). Likewise, Category 3 sales—an estimate of the products that incorporate MediaTek chips that unrelated, foreign third-parties may import into the United States, with no involvement of MediaTek—necessarily are, at best, acts of indirect infringement. Therefore, Mr. Benoit's Category 2 and 3 sales cannot be acts of direct infringement. At most, they would constitute indirect infringement.

Yet, Mr. Benoit simply ignores these facts and predicates his damages purely on a direct infringement theory. Ex. 1 ¶¶ 105, 107, 113. It would be error to allow Mr. Benoit to present his damages opinions for Categories 2 and 3 to the jury under solely a direct infringement theory. *See TecSec v. Adobe*, 978 F.3d at 1291 ("TecSec presented no evidence of damages caused by Adobe's direct infringement."); *see also AOS Holding Co. v. Bradford White Corp.*, No. CV 18-412-LPS, 2021 WL 5411103, at *40 (D. Del. Mar. 31, 2021), *aff'd sub nom. A. O. Smith Corp. v. Bradford White Corp.*, No. 2021-2222, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022) (awarding only nominal damages because the plaintiff's damages theories were premised upon sales of the accused products, but no sales occurred as part of the defendant's direct infringement); *Niazi Licensing*

*Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (affirming exclusion of an expert's opinions where the alleged damages were not tied to the act of infringement).

Whether Mr. Benoit could have premised his damages opinions on theories of indirect infringement is not relevant, as he intentionally elected to tie his opinions only to direct infringement theories, and has waived other theories. *Exafer Ltd v. Microsoft Corp.*, No. 1:20-CV-131-RP, 2024 WL 4212347, at *4 (W.D. Tex. Aug. 15, 2024) *appeal pending*, No. 24-2296 (Fed. Cir. Filed Sept. 10, 2024). Under *TecSec*, Mr. Benoit failed to "adequately tie a dollar amount to the infringing acts," and his opinion should be excluded. *TecSec v. Adobe*, 978 F.3d at 1291.

### iii.    Mr. Benoit Fails To Show Any Causation To Warrant Foreign Damages

Mr. Benoit's damages opinions for Categories 2 and 3 also fail under a *Brumfield* analysis. "The territorial reach of section 271 is limited. Section 271(a) is only actionable against patent infringement that occurs within the United States." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) (collecting cases), *abrogated on other grounds by, Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (*en banc*).

Thus, to potentially claim damages for foreign conduct, a patentee must start with domestic infringement that has a "causal relationship to the foreign conduct for which recovery is sought." *Brumfield*, 97 F.4th at 878. In other words, "a patent owner claiming infringement . . . may recover . . . foreign profits ***proximately caused by domestic infringement***." *Id.* at 866 (emphasis added); *see also WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 415 (2018). There are strict conditions for foreign conduct to "properly play a role in calculating patent damages." *Brumfield*, 97 F.4th at 878. At bottom, "the hypothetical negotiation must turn on the amount the hypothetical infringer would agree to pay to be permitted to engage in the domestic acts constituting 'the

███████████████████████████████████████████

infringement.'"  *Id.* at 877.  In other words, the patentee necessarily must, at least, demonstrate a

causal connection for a foreign-conduct analysis in a reasonable-royalty case:

> If the patentee seeks to increase that amount [of patent damages] by pointing to
> foreign conduct ***that is not itself infringing***, the patentee must, at the least, show
> why that foreign conduct increases the value of the domestic infringement itself—
> because, e.g., ***the domestic infringement enables*** and is needed to enable
> otherwise-unavailable profits from conduct abroad—while respecting the
> apportionment limit that ***excludes values beyond that of practicing the patent***.

*Id.* (emphasis added).  Any use of foreign conduct in the calculation of damages must "begin [with]

a showing of causation based on '***domestic infringement***.'"  *Id.* at 879.  And even that may not be

sufficient.  *Id.* at 877.

Mr. Benoit has not come close to making this showing.  ████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████  Not once does Mr. Benoit

discuss causation in his analysis.  *See generally* Ex. 1.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████  There is no correlation between these

foreign sales and an act of domestic infringement.  Nor is there any evidence or opinion of how

any alleged "domestic infringement enables and is needed to enable otherwise unavailable profits

from conduct abroad." *Brumfield*, 97 F.4th at 877.  Mr. Benoit's analysis of domestic infringement and foreign conduct are completely divorced and therefore legally insufficient under *Brumfield*.

Because Mr. Benoit's foreign sales are not tied to any domestic act of infringement, and because he fails to explain or provide any causal basis or enablement by the domestic infringement to overcome the presumption against extraterritoriality, Mr. Benoit's damages based on foreign sales or shipments should be excluded.

**B.    Mr. Benoit's Category 3 Importation Calculation Also Fails Under *Cyntec***

Even setting aside Mr. Benoit's gross overreach for foreign sales, the methodology he uses to estimate the amount of sales to foreign third parties that may ultimately be imported into the U.S. is flawed and independently requires exclusion (even under an indirect infringement theory).

But his U.S. importation rates rely on broad industry data from International Data Corp. ("IDC") that suffers from the same shortfalls the Federal Circuit has previously criticized.

For example, in *Cyntec Co., Ltd. v. Chilison Elec. Corp.*, the plaintiff's damages expert "estimated the amount of [defendant's] sales of accused products imported into the United States" using SEC filings, annual reports, and Gartner Research data.  84 F.4th 979, 988-89 (Fed. Cir. 2023).  The expert then calculated each customer's U.S.-to-worldwide revenue ratio and applied those ratios to the defendant's foreign sales for each customer.  *Id.* at 989.  The district court allowed the testimony, but the Federal Circuit deemed that an error and vacated the jury's damage award.  In doing so, the Federal Circuit identified several critical defects.  First, the Court found that revenue reported in the customers' annual reports included "sales of irrelevant products and services" that were not accounted for.  *Id.*  Second, the plaintiff assumed that each third-party

███████████████████████████████████████

product shipped into the United States contained an infringing component despite the fact that neither party knew whether the third-party products contained the accused component or how many accused components were in the third-party products. *Id.* at 990. And third, while the plaintiff used the generic industry data to corroborate six of the 27 customers at issue, the court still found that that the "corroboration" was insufficient to save the importation calculations. *Id.* Thus, the Court was "left with an expert opinion derived from unreliable data and built on speculation," which required exclusion. *Id.*; *see also Niazi Licensing v. St. Jude Med. S.C.*, 30 F.4th at 1343-44 (excluding sales data that "fail[ed] to account for noninfringing uses of the sold devices"); *Power Integrations v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1372-74 (Fed. Cir. 2013) (excluding expert testimony for making "two speculative leaps" by relying on documents for worldwide shipments of mobile phones when the accused products were found in the chargers, not the phones themselves, and for assuming that each shipment included a charger).

Here, Mr. Benoit's IDC-based calculations compound every error identified in *Cyntec*, and then some. ***First***, he fails to account for irrelevant products and services captured in the IDC data he relies on. *See* Ex. 1 ¶¶ 202-210; *see also Cyntec*, 84 F.4th at 989. ████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ In other words, the data includes products well-beyond those accused in this case. Ex. 5 at 211:21-212:21. Like the expert in *Cyntec*, Mr. Benoit does not account for this, thereby rendering his reliance on this data unreliable. 84 F. 4th at 988-89.

███████████████████████████████████████

**Second**, Mr. Benoit improperly relies on this IDC data without any understanding of the methodology used to collect the data. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ As a result, it was unreliable for him to rely on it. *See Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1338 (Fed. Cir. 2022) (finding a "key reliability problem" in an expert's use of an external report to reach his conclusion, when the expert "did not (and could not) adequately characterize . . . the study's methodology"); *see also TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (an expert's "lack of familiarity with the methods and the reasons underlying [another's] projections virtually preclude[s] any assessment of the validity of the projections through cross-examination"); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012) (affirming exclusion of an expert's opinions because the expert did not "know the methodology used to create the [data] or the assumptions" on which the data was based).

**Third**, Mr. Benoit failed to corroborate any of the IDC data he relies on. *See* Ex. 5 at 213:7-214:2, 217:19-218:3. In *Cyntec*, the Federal Circuit found the industry data was unreliable even though the expert corroborated the data with six of the 27 customers. 84 F. 4th at 990. Here, Mr. Benoit did not corroborate the data at all—he just accepts the data without any scrutiny. *See* Ex. 1 ¶¶ 208-209.

**Fourth**, the IDC data cannot be reliably used to estimate importation because it is not U.S. specific. *See* Ex. 6; Ex. 1, Exs. F-F.2; Ex. 5 at 211:16-19. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ compounds the unreliability because each step in Mr. Benoit's importation rate analysis involves assumptions and approximations untethered to the accused products.

**Finally**, in addition to founding his calculation on unreliable IDC data, he compounds the problem with his importation rate calculation in another way. █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ *See Paltalk Holdings, Inc. v. Cisco Sys., Inc.*, No. W-21-CV-00757-ADA, 2025 WL 2581690, at *10 (W.D. Tex. Aug. 27, 2025) ("[A] reasonable royalty for a method claim must be tied to the alleged infringer's use of the method, not merely to its sale of products capable of practicing the claimed method"). "[W]here the only asserted claim is a method claim, the damages base should be limited to products that were actually used to perform the claimed method." *Niazi Licensing v. St. Jude Med. S.C.*, 30 F.4th at 1357. Mr. Benoit "did not address or rely on any evidence . . . that estimated the amount or percentage of sold devices that were actually used to infringe the claimed method." *Id.* And, assuming that the claimed method was the "predominant" method is insufficient. *Id.* █████████████████████████████████

████

The cumulative effect of Mr. Benoit's analysis results in an importation rate that is entirely speculative, unreliable, and therefore inadmissible. The Court should exclude all the "imported sales" from Mr. Benoit's royalty base.

████████████████████████████████████████████████████

### C.    Mr. Benoit Fails To Apportion

Mr. Benoit calculates what he opines are the incremental profits allegedly attributable to

the patents-in-suit. ██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████    ██████████████████████████████████████

██████████████████████████████████████████  Fundamental flaws exist in both

steps.  There is no dispute that apportionment is required in this case.  *See* Ex. 5 at 71:4-22, 73:16-

18.[2]  And the law is clear that identifying an SSPPU does not necessarily satisfy that requirement.

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) (noting that

apportionment is required "even where the proposed royalty base is the smallest saleable patent

practicing unit or SSPPU"); *see also* Ex. 5 at 74:6-75:2.  Mr. Benoit's analysis violates controlling

law and should be excluded.

i.    <u>Mr. Benoit Violates Black Letter Law By Relying On A Non-Comparable</u>
<u>Agreement To Attribute ████████████ To The Receiver Functionality</u>

To identify the SSPPU revenues attributable to receiver functionality, █████████████

█████████████████████████████████████████████████████

██████████████████████████████████████  Mr. Benoit bears the

burden of proving that the license he relies upon is sufficiently comparable.  *Omega Pats., LLC v.*

*CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021).  He does not meet that burden.  In fact, he

opined the opposite—███████████████████████████████████████████████

---

[1] Mr. Benoit relies on Mr. Rickett's (ParkerVision's technical expert) identification of the alleged
SSPPUs. Ex. 1 ¶ 304 n.590.

[2] Mr. Benoit also confirmed he was not relying on the entire market value rule. █████████████
█████████████████████████████████

██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ Mr. Benoit's

reliance on the ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ is error. He cannot pluck favorable provisions

from a non-comparable agreement and use them to calculate damages. *See MLC*, 10 F.4th at 1375

(affirming district court's determination that the licenses were not comparable and therefore could

not provide proper support for apportionment of the patented technology); *Lucent Techs., Inc. v.*

*Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("licenses relied on by the patentee in proving

damages [must be] sufficiently comparable to the hypothetical license at issue in suit");

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (same).

      ii.    Mr. Benoit's Allocation Of 100% Of The SSPPU Receiver Technology To The Asserted Patents Is Unreliable And Violates Controlling Law

After ████████████ of the SSPPU revenue to receiver functionality, Mr. Benoit fails to

properly apportion in his next step when he opines that 100% of that receiver functionality is

attributable to the patented functionality. Ex. 1 ¶ 307. His report offers no basis or support for

this 100% allocation. The entirety of his "opinion" on the critical issue of apportionment is a throw

away sentence that the ████████████████████████████████████████████

██████████████████████████ There is no citation to evidence, much less

any analysis or quantitative support provided. *Id.* This violates controlling law, which prohibits

apportionment opinions that are not supported by "credible economic analysis" or "quantitative[]

support." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) ("This

complete lack of economic analysis to quantitatively support the one-third apportionment echoes

the kind of arbitrariness of the '25% Rule' that we recently and emphatically rejected from damages experts, and would alone justify excluding Mr. Murtha's opinions"); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020) (referring to "*LaserDynamics*' requirement of quantitative support for apportionments"). Courts regularly exclude expert's opinions that fail to satisfy the requirement that apportionment opinions have reliable, quantitative support. *See, e.g.*, *NetFuel*, 2020 WL 1274985, at *7 (excluding apportionment opinions that "lack[ed] economic analysis" and where the expert "failed to provide the methodology underlying his apportionment amount or explain how he arrived at that figure based on the facts of this case, his apportionment opinion is not backed by 'sufficient facts or data' or by 'reliable principles and methods'"); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-WHO, 2018 WL 6727826, at *12 (N.D. Cal. Dec. 21, 2018) (granting motion to exclude expert's apportionment opinions where there was "no apparent basis for [the expert's] conclusory approximation of a percentage value.").

Apportionment is the cornerstone of patent damages and requires that the "patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (proof of damages must be "carefully tie[d] … to

15

the claimed invention's footprint"); *see also Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("the patent owner must apportion or separate the damages between the patented improvement and the conventional components" of multi-component products to "ensure that [the patent owner] is compensated for the patented improvement"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018) (The "patentee must give evidence tending to separate or apportion the infringer's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.") (internal quotations and citation omitted); *Brumfield*, 97 F.4th at 877 (damages must be limited to the "value of the claimed technology").  And it is the "essential requirement for reliability."  *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("[A]s we have repeatedly held, the essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  In short, apportionment.") (quotation marks and brackets omitted).

Not only does Mr. Benoit's unsupported 100% apportionment opinion violate controlling law, it is entirely contradicted by the only evidence in the record on this issue.  ██████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████  These fundamental apportionment failures cannot be addressed through

████████████████████████████████████████████████████

cross-examination and warrant exclusion. *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK,

2014 WL 1494247, *6 (N.D. Cal. Apr. 16, 2014) ("Without a methodology . . . cross-examination

is futile."); *supra* Section III.C.i.

D.    **Mr. Benoit Lacks The Requisite Expertise For His Cost-Savings Opinions**

In addition to Mr. Benoit's attempt to quantify the incremental profits, he also offers a

technical opinion that the claimed inventions allow for ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████    ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████    That alone is error because Mr. Benoit is not a

technical expert and lacks knowledge or expertise to make such a determination. *See M2M*

*Solutions LLC v. Motorola Solutions, Inc.*, C.A. No. 12-33-RGA, 2016 WL 767900, *1-*7 (D.

Del. 2016) (excluding expert who attempted to "approximate how many users of the accused

modules actually use the modes or features of these modules that constitute the infringing

technology" because the expert was not qualified to opine on the technical features of the patented

technology").

Mr. Benoit is a Certified Public Accountant.  Ex. 1 ¶ 3.  At deposition, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████    Mr. Benoit, therefore,

lacks the technical expertise to independently make these determinations.  Yet, Mr. Benoit's

---

[3] "PCB" stands for "printed circuit board."

██ ████████████████████████████████████████████████████
████████████████████████████████████████████

ultimate cost-savings opinion is undeniably a technical issue—

Because Mr. Benoit lacks the appropriate expertise and does not base his opinions on reliable inputs, his cost-savings opinions should be excluded. *See Atl. Specialty Ins. v. AE*

███████████████████████████████████

*Outfitters Retail Co.*, 970 F. Supp. 2d 278, 289 (S.D.N.Y. 2013) ("Rule 702 requires that expert testimony rest on 'knowledge,' a term that connotes more than subjective belief or unsupported speculation.   Expert testimony that is speculative or conjectural, therefore, is inadmissible.") (citations and some internal quotations omitted); *Daubert*, 509 U.S. at 590 (similar).

### E.    Mr. Benoit's 50/50 Profit Allocation Contravenes Federal Circuit Law

Mr. Benoit's reasonable royalty damages opinions are based on his use of the Income Approach method where he purports to calculate the incremental profits (and costs savings) allegedly attributable to the patents-in-suit, ████████████████████████████

████[6] He goes on to opine that MediaTek ███████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████    ████████████    ███████████

███████████████████████████████████

███████████████████████████████████

██ This opinion is conclusory and untethered to the facts of the case.

First, an expert offering a profit split opinion is required to support that opinion with a reliable methodology.  *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 31, 2020) (expert "obligated to assign each party a portion of the profits attributable to the infringing features based on a hypothetical negotiation between the two" by using a "reliable methodology to assign [those] profits").  Indeed, the Federal Circuit has made clear that profit split opinions which are nothing more than "conclusory assertions" are

---

[6]  These totals were revised in Mr. Benoit's Revised Exhibits C-C.3 (Ex. 4) but not in Mr. Benoit's report.

████████████████████████████████

improper and should not be admitted. *See VirnetX*, 767 F.3d at 1333. Mr. Benoit's opinion is just that—a recitation of "common intrinsic benefits and costs" with exceedingly minor risk adjustments followed by a conclusory 50/50 profit split. *See* Ex. 1 ¶¶ 344-350. Because Mr. Benoit fails to set forth his methodology and merely offers a "boilerplate assertion about the relative bargaining powers of the parties," his profit split opinion should be excluded. *Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4090431, at *7 (N.D. Cal. July 5, 2015).

Second, Mr. Benoit's equal profit split conclusion is essentially an unsupported assumption/rule of thumb that Federal Circuit law prohibits. *See VirnetX*, 767 F.3d at 1334 ("the suggestion that those profits be split on a 50/50 basis—even when adjusted to account for certain individual circumstances—is insufficiently tied to the facts of the case, and cannot be supported"); *Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4090431, at *7 (N.D. Cal. July 5, 2015) (excluding profit split opinion that "fails to tie the 50/50 split to the specifics of this case or to explain why such a split would be reasonable—other than to invoke a boilerplate assertion about the relative bargaining powers of the parties"). As the Federal Circuit has explained, the problem with allowing such opinions to go the jury is that "the use of a 50/50 starting—itself unjustified by evidence about the particular facts—provides a baseline from which juries might hesitate to stray, even if the evidence supported a radically different split." *VirnetX*, 767 F.3d at 1333.

And the facts do not support his conclusory opinion. MediaTek is the world's fifth largest global fabless semiconductor company powering approximately 2 billion devices annually with its chips. Ex. 1 ¶ 33. ██████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████ Mr. Benoit ignores these inconvenient facts and simply concludes a 50/50 split applies. *See Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-05973 PSG, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) (striking expert testimony where the expert started the reasonable royalty analysis by assuming the parties would agree to a 50% split of the gross profits without any economic evidence to support that arbitrary figure); *Sonos, Inc. v. Google LLC*, No. 20-06754, 2023 WL 3933071, at *9 (N.D. Cal June 9, 2023) (rejecting expert's 70/30 split in favor of plaintiff because it was "not specific to Sonos or the technology claimed by the patents-in-suit" and was thus "insufficiently tied to the facts of the case").

Mr. Benoit's failure to disclose a methodology and errant application of a rule of thumb cannot be addressed through cross-examination. By failing to disclose his methodology or provide any analysis to tether his opinion to the facts of the case, the fact finder is left to "guess how his conclusions are derived from any of the data before him[.]" *Bona Fide Conglomerate, Inc. v. SourceAmerca*, No. 3:14-cv-00751, 2019 WL 1369007, at *7 (S.D. Cal. Mar. 26, 2019). Mr. Benoit's conclusion comes from, at best, an "impermissible black box without sound economic and factual predicates," and it would be improper to allow him to present this opinion to the jury. *GPNE v. Apple*, 2014 WL 1494247, at *5 (internal quotations and citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, MediaTek respectfully requests the Court grant its *Daubert* motions to exclude certain portions of Mr. Benoit's expert testimony.

Dated:  February 19, 2026

Respectfully submitted,

**PERKINS COIE LLP**

_/s/ Kyle R. Canavera_
_____

Kyle R. Canavera
(CA Bar No. 314664)
kcanavera@perkinscoie.com
Eric R. Maas
(CA Bar No. 345450)
EMaas@perkinscoie.com
**PERKINS COIE LLP**
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
Tel. (858) 720.5700
Fax (858) 720.5799

Ramsey M. Al-Salam
(WA Bar No. 18822)
RAlsalam@perkinscoie.com
Christina McCullough
(WA Bar No. 47147)
CMcCullough@perkinscoie.com
Kevin A. Zeck
(WA Bar No. 41689)
kzeck@perkinscoie.com
**PERKINS COIE LLP**
1301 Second Ave., Suite 4200
Seattle, WA 98101
Tel.: (206) 359.8000
Fax: (206) 359.9000

Matthew C. Bernstein
(CA Bar No. 199240)
Matt@BernsteinIPStrategy.com
**BERNSTEIN IP STRATEGY**
14161 Caminito Vistana
San Diego, CA 92130

Richard W. Erwine
(NY Bar No. 2753929)
RichardErwine@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

Zach Summers
(Pro Hac Vice)
ZachSummers@quinnemanuel.com

Lance Yang
(Pro Hac Vice)
LanceYang@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Kevin Hardy
(Pro Hac Vice)
KevinHardy@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington D.C. 20005
(202) 538-8000

**ATTORNEYS FOR DEFENDANTS
MEDIATEK INC. AND MEDIATEK USA
INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon Plaintiff's counsel of record by email on February 19, 2026.

*/s/ Kyle R. Canavera*
Kyle R. Canavera